Cornelia COURTRIGHT, Appellant,

v.

SOUTHERN COMPRESS & WAREHOUSE
COMPANY, Appellee.

No. 13076.

Court of Civil Appeals of Texas.

Galveston.

Feb. 21, 1957.

Crawford & Kugle and William H. Kugle, Jr., Galveston, for appellant.

Barker, Barker & Simpson and Jerry D. Barker, Galveston, for appellee.

GANNON, Justice.

This is an "attractive nuisance" death action by Cornelia Courtright to recover damages for the alleged negligent killing by defendant of plaintiff's six year old son when he fell from and was run over by one of defendant's trailers on the streets of Galveston. The defendant, Southern Compress & Warehouse Company, filed a mo-

tion for summary judgment on the pleadings under Rule 166–A, Texas Rules of Civil Procedure. On hearing, after notice, and under that Rule, the trial court entered summary judgment against plaintiff, from which she appeals.

As set out in appellant's brief, "There is but one issue before the court on appeal, to wit, whether or not plaintiff's original petition stated a cause of action." The nature of the issue clearly appears from the following quoted allegations of plaintiff's petition and of the motion for summary judgment.

In the petition it is alleged:

### III.

"At all times material to this cause of action, defendant was engaged in the practice of moving bailed cotton over the streets of Galveston, Texas, on small trailers drawn by tractors. Defendant customarily moves cotton on strings of five (5) trailers. For many years, defendant has operated such tractor-drawn-trailers down Avenue 'E', or Post Office Street, in the City of Galveston. Avenue 'E' abuts on and is contiguous to a housing development of the Galveston Housing Authority, known as Oleander Homes. Many hundreds of children of all ages reside in Oleander Homes, and play around and on the streets abutting on the Housing Development. Plaintiff would show the Court that the tractors and trailers which are operated by defendant are especially attractive and fascinating to small children. In fact, the tractor-trailer rigs resemble a small train and suggest by their appearance the sort of attraction found at amusement parks for children. For many years, children have ridden on the trailers as they were drawn over the streets of Galveston. Although the trailers in motion are highly dangerous to small children, defendant has continued through the years to operate them at places where large concentrations of small children were known to be, such as that part of Avenue 'E' abutting on Oleander Homes. Because of the unusual attractiveness of the trailer devices, the parents of children in the areas where trailers were drawn have found it impossible to keep their children from catching rides on the trailers, other than by actually confining their children.

### IV.

"Plaintiff would show the Court that prior to the incident complained of in this petition, she was the mother of William Courtright, a minor boy of the age of six (6) years. On March 1, 1955, plaintiff was living at No. 58–H, Oleander Homes with her five minor children. At about 4:00 o'clock in the afternoon of March 1st, her son, William, was playing with other children in the vicinity of their home at No. 58–H Oleander Homes. Although plaintiff had strictly forbidden her children to go into the streets, William, along with another child, caught a ride on a string of trailers laden with cotton. In attempting to pass from one trailer to another, the boy, William Courtright, fell between two of the trailers and was crushed to death when the wheels of the trailer passed over him. The death of plaintiff's son was brought about and/or caused by the following acts of negligence, both of omission and commission on the part of defendant, its agents, servants and employees, each of which act of negligence was the proximate cause of William Courtright's death, and the resulting damage to plaintiff;

"(a) In maintaining a highly dangerous condition at a place where small children were known to congregate.

"(b) In maintaining a highly dangerous condition which was unusually attractive to small children at a place where small children were known to congregate.

"(c) In failing to maintain an employee on the back of said string of trailers to keep children from catching rides on said trailers.

"(d) In failing to have a guard stationed at the Oleander Homes to keep children from catching rides on the trailers.

"(e) In the failure of defendant's tractor driver at the time and place in question to keep a look-out to the rear for small children riding on said trailers.

"(f) In the failure of defendant's tractor driver to stop the trailer before they crushed plaintiff's son to his death.

"(g) In the failure of defendant's tractor driver to discover the child riding on the trailer before he was killed.

"(h) In maintaining a condition which involved an unreasonable risk to small children.

### V.

"Plaintiff would show the Court that her son, William, because of his youth did not realize the risk involved in riding on the trailers at the time and place in question."

The grounds of the motion for summary judgment are shown by the following quoted parts:

### II.

"Plaintiff's cause of action as set forth in Plaintiff's Original Petition is based entirely upon the doctrine of attractive nuisance. This is borne out particularly in Paragraph IV of Plaintiff's Original Petition wherein Plaintiff alleges that the incident upon which the suit is based occurred when the child, William Courtright, six years of age, was killed when the said minor child stole or caught a ride on a string of trailers laden with cotton and that the said William Courtright was killed during said stolen ride when moving or passing from one trailer to another, all as more fully alleged in said paragraph. By virtue of plaintiff's allegations in Plaintiff's Original Petition, the minor child William Courtright was a trespasser and defendant owed none of the duties listed as acts of negligence in Paragraph IV of plaintiff's

said petition unless the doctrine of attractive nuisance applies to the fact situation set forth in Plaintiff's Original Petition. Unless the doctrine of attractive nuisance can be held to apply to Plaintiff's cause of action, plaintiff cannot recover as a matter of law.

### III.

"It is asserted by Defendant that the doctrine of attractive nuisance cannot, as a matter of law, apply to the fact situation alleged in Plaintiff's Original Petition. Since there could be nothing gained by a trial of this cause and since this court must hold as a matter of law that the Plaintiff cannot recover said motion should be granted."

■ Since, in our opinion, the facts alleged in the petition do not establish the breach by defendant of any legal duty which it owed plaintiff's son, William Courtright, we affirm the judgment of the trial court.

On analysis it appears from the petition that it is claimed, on the facts stated, it was negligence (a) for defendant to operate its tractor trailer rigs *at all* on the streets of the City of Galveston *near to Oleander Homes,* where large concentrations of small children were known to be, (b) for defendant to neglect to employ and station guards either on or about the string of trailers or at Oleander Homes to keep children from catching rides on defendant's trailers, (c) for defendant's tractor driver not to keep a lookout to the rear for small children attempting to catch rides on the trailers, and (d) for the tractor driver to fail to discover the child in some manner after he boarded the trailer and before the child fell off and was run over and killed. The attempted allegation of negligence in the failure of the tractor driver *to stop* the trailer before the child was crushed to his death is rendered nugatory by plaintiff's affirmative allegation that the driver failed to discover the child riding on the trailer before he was killed.

We do not think the facts alleged support plaintiff's claims of negligence because, in our opinion, the defendant had a lawful right and privilege to use the streets of Galveston to transport its tractor-drawn trailers loaded with cotton at the place where it is alleged the tractor-drawn trailers were being operated, and we believe there was no duty in law on defendant, as a condition of exercising its privilege, either to maintain guards to prevent children from trespassing on the tractor-drawn trailers or to require its tractor driver to maintain a lookout to the rear to discover the possible presence of children on one of the trailers.

The attractive nuisance doctrine is familiar law. It was conceived as a legal fiction to avoid children who were attracted or lured onto private premises by machinery or other structures peculiarly attractive to them from being in the status of trespassers. Under the doctrine as ordinarily understood, one who maintians on his premises dangerous machinery or structures or other conditions peculiarly attractive or alluring to children is held thereby to invite children of tender years, lacking discretion to appreciate the dangers involved, onto the property so as to put the children in the position of invitees. However, technically speaking, under the decision in Banker v. McLaughlin, 146 Tex. 434, 208 S.W.2d 843, 8 A.L.R.2d 1231, the doctrine as originally conceived is now somewhat altered in Texas. Under that decision, attraction or allurement by the offending device or condition is no longer requisite, or for that matter important, except on the element of *foreseeability,* in determining actionable negligence. By Banker v. McLaughlin it is established that an owner of premises who maintains thereon a condition dangerous to children of immature years and lacking in discretion to appreciate danger may be liable to or on account of children injured thereby *if the owner knows or has reason to anticipate that children are using the premises or are likely to do so.* In short, the status of the child as a trespasser is no longer material, and it is now held in our State that a landowner owes imprudent children of tender years the duty to use ordinary care for their safety whenever their presence is to be anticipated. However, as we read our Supreme Court decisions, the duties of a landowner do not extend to the oppressive or unreasonable, but are limited in all instances by circumstances and on considerations of the utility of the device or structure to the landowner in comparison with the likelihood of injury to the child and as well by the over-all feasibility of taking steps to prevent injury when the rights of owner and child alike are taken into account.

In Banker v. McLaughlin, supra [146 Tex. 434, 208 S.W.2d 84₎₎ the court stressed the unimportance of the status of a child as a trespasser, and in quoting from Prosser on Torts (1941), emphasized the following: " *'The better authorities now agree that the element of "attraction" is important only in so far as it may mean that the trespass is to be anticipated, and that the basis of liability is merely the foreseeability of harm to the child * * *.'* " The quotation from Prosser was in support of the following holding of the court: "While there was substantial proof of the inherent attractiveness of the place [a pool of water] we, under our view of the case as properly one of negligence, *are concerned primarily with the dangerous condition created by the petitioner on his open premises and the fact that the dangerous features of the condition could have been eliminated at small expense without interfering with the owner's marketing of the homesites.* The element of attraction is *important only* in so far as it may mean that *the presence of children was to be anticipated.*" In Banker v. McLaughlin the court stated the factual features which are determinative in this character of action. We quote: "(a) the place where the condition was maintained was one upon which the possessor knew or should have known that small children would likely frequent the place and play about it; (b) the

condition was one of which the possessor knew, or should have known involved an *unreasonable* risk of death or serious bodily harm to such children; (c) the child, because of its tender years, did not realize the risk involved in going into the pool; and (d) *the utility, if any, to Mr. Banker of eliminating" sic* [*continuing*] *"the danger was slight as compared to the probability of injury resulting therefrom.* See in this connection, Restatement, Torts, Sec. 339, and 36 A.L.R., p. 294."

From the foregoing it is plain that in this character of action it is important not only that the defendant be able to anticipate the presence of and danger to small children, but as well that the offending condition or instrumentality present an *unreasonable* risk of harm, and further that the utility to the owner of maintaining the offending condition or instrumentality be slight as compared to the likelihood of serious injury or harm to children. From other parts of the opinion it is also clear that the burden or hardship to the owner of eliminating of guarding against danger to children is an important consideration. That is to say, that a citizen may not be unfairly encumbered in the use of his property, or other privileges, for legitimate purposes by the weight of an oppressive or intolerable burden or requirement in comparison to which the danger of harm or injury to unwary children of tender years is relatively slight and remote.

■ Our understanding of the court's holding in Banker v. McLaughlin is, we think, supported by Judge Taylor, the author of the opinion, in his dissent in Massie v. Copeland, 149 Tex. 319, 233 S.W.2d 449, 456. In this dissent he says: "This is a negligence case under the holding in Banker v. McLaughlin in which the attractiveness of the pit merely has bearing on knowledge that the owners had that children resorted to it, and had been doing so for such time that they were no longer trespassers." Admittedly, this language confuses the matter somewhat. Under the majority opinion in Banker v. McLaughlin, one gathers the impression that under certain circumstances the landowner owes a duty *even to a trespassing child.* However, under Judge Taylor's dissenting opinion in Massie v. Copeland, one could be led to understand that liability arises only after children have trespassed often enough to be no longer classed as such. We follow what we consider to be the ruling of the majority in Banker v. McLaughlin, supra, namely, that anticipated *trespassing children,* regardless of their status as such are entitled at the hands of owners of land or of dangerous instrumentalities on the public streets, to ordinary care on the part of those in control of the offending condition or instrumentality; but that the demands of ordinary care are to be determined on the basis of *reasonableness* and on the basis of a *just balancing of rights* between those charged with liability on the one hand and indiscreet children on the other.

In arriving at a just balance of the rights of the parties to this litigation, we find no Texas case which is factually analogous or particularly helpful. Our own recent decision in George v. Texas & N. O. R. Co., 290 S.W.2d 264, actually went off on the proposition that the age of the boy there involved precluded him being a beneficiary of the attractive nuisance doctrine, but in that case we did indicate our view that the doctrine had no application to moving trains or vehicles. That is the view expressed by every court to whose opinion we have been referred or which we have located in our independent search of the authorities.

The cases point out that there are only three conceivable duties which the owner of a moving vehicle would owe to a child of tender years attempting to catch or "hook" a ride thereon. These are: (1) not to put the vehicles on the public ways or private ways of railways at all, (2) to require those in charge of operating such vehicles to maintain an Argus-eyed lookout to the rear for the possible presence of

such children, and (3) to require the operators of such vehicles to maintain outriders or guards to prevent children from "hooking" or catching rides thereon. In every instance each and all of such supposed duties have been held nonexistent because either contrary to public policy or because in the balancing of rights between the parties there would be imposed an oppressive and intolerable burden upon the party charged with negligence in such respects. See Restatement, Torts, Sec. 339, Comment on (d), page 925. The cases need not be reviewed or even cited. All recognize that most anything which moves on wheels is peculiarly attractive and alluring to children of tender years lacking in discretion to appreciate danger. They are all to be located through the annotation in 3 A.L.R. 2d 758, as supplemented, entitled "Attractive nuisance doctrine as applied to vehicles or their contents." Opinions of the Kentucky, Kansas and Nebraska courts in the following cases are representative of all: Swartwood's Guardian v. Louisville & N. R. Co., 129 Ky. 247, 111 S.W. 305, 19 L.R.A., N.S., 1112; Louisville & Nashville Railroad Co. v. Spence's Adm'r, Ky., 282 S.W. 2d 826; Gamble v. Uncle Sam Oil Co. of Kansas, 100 Kan. 74, 163 P. 627, L.R.A. 1917D, 875; Zigman v. Beebe & Runyan Furniture Co., 97 Neb. 689, 151 N.W. 166, L.R.A.1915D, 536.

Two cases are sometimes claimed to support the application of the attractive nuisance doctrine to moving vehicles. These are Skinner v. Knickrehm, 10 Cal. App. 596, 102 P. 947, and Middaugh v. Waseca Canning Co., 203 Minn. 456, 281 N.W. 818. However, on close study, it will be found that the cases fall short of the claims made for them. In Skinner v. Knickrehm, supra, as was pointed out by the Nebraska court in its opinion in Zigman v. Beebe & Runyan Furniture Co., supra, those in charge of defendant's operation had *actual knowledge* of the presence of the children on or about the wagon there involved and *after such knowledge* failed to take such precautions as were prudently indicated. And, it is only on the basis of actual knowledge that the case can be reconciled with a later and more authoritative California Supreme Court case, Allred v. Pioneer Truck Company, 179 Cal. 315, 176 P. 455. Skinner v. Knickrehm, supra, is by one of California's intermediate courts of appeal. Middaugh v. Waseca Canning Company, supra, is clearly distinguishable in that that case was decided on the basis of a violation of a statute of Minnesota which the court held to be for the benefit of children, ruling that one of the objects of the statute was to prevent children being allured into catching rides on moving vehicles. In this connection compare the earlier Minnesota case of Emerson v. Peteler, 35 Minn. 481, 29 N.W. 311, where it was held that a contractor grading a street who used small dump cars for transporting dirt in the course of the work was under no duty to provide a watchman to prevent children from boarding the moving cars under the temptation to ride.

In Banker v. McLaughlin, supra, our Supreme Court states that while the rules and principles governing cases of this kind are well established, they "should be applied with caution; that is, they should be given application only when the controlling facts bring the case well within such rules and principles," and at another point the court says: "the governing rules and principles have been regarded from the beginning as among those which should be cautiously applied."

In view of this counsel of caution and of our duty to justly balance rights between claimants and parties charged with negligence in cases such as this, we do not feel warranted in being the very first court in the land, contrary to the opinion of every other court which has ruled on the question, to hold the "attractive nuisance doctrine" applicable to moving vehicles such as that of the defendant under the circumstances alleged in the petition. That the stealing of rides by immature children on moving

vehicles on the public ways is sporadic is, as emphasized by the Kentucky court in the Swartwood case, supra [129 Ky. 247, 111 S.W. 306], well known. It is stated in that case: "It is true it is known that such trespasses are probable; *but they are sporadic* * * * to require this additional duty [to guard against infant trespassers] would be to put railroad operations *beneath the rights of trespassers upon the railway tracks*." The "compassionable innocence" of very young children has strong appeal, but the court must be governed by its head as well as by its heart, and, in caution, when we weigh the relative "rights" of parties to actions such as the present and take into consideration the nonfeasibility and impracticality of the law imposing upon the defendant the duties and obligations which the plaintiff here contends for, we are convinced that the uniform result reached by all American courts on the question is sound and that we must follow it.

The judgment of the trial court is affirmed.