(December 17, 1964)

■ JOSEPH PINTO, an Infant, by His Guardian ad Litem, HILDA J. PINTO, et al., Respondents, v. MR. SOFTEE OF N. Y., INC., Appellant, et al., Defendant.

MEMORANDUM BY THE COURT. Judgment in favor of plaintiffs reversed on the law and the facts and the complaint dismissed, with $50 costs to appellant. The infant plaintiff was injured on July 14, 1959, when he allegedly fell to the street while "hitching" a ride on the back of the appellant's mobile ice-cream truck. There was no proof that the construction of the truck violated any statute or rule of any governmental agency. It was of a type widely used by many companies, and the rear ledge of the truck served a reasonable and necessary purpose in giving access to the rear compartment of the truck. Appellant was held liable here not because the driver had any warning that the infant plaintiff was hitching on the truck or because the driver operated the truck dangerously or improperly on the date of the accident, but because the truck had an appeal to children and had a ledge on the rear thereof that might be utilized by children to steal a ride. There was no duty to make a change in the vehicle that would prevent the happening of the kind of accident that occurred here — if indeed any change would have prevented boys from attempting to hitch a ride — and the Trial Judge should not have permitted the jury to speculate on the existence of any such duty. We hold there was no evidence of negligence on the part of appellant. Almost any vehicle will be a lure to adventuresome youngsters to steal a ride thereon.

As already indicated, the construction of the truck involved herein was of the type widely used by other companies. Hence, the construction may not be considered a trap or nuisance. That one or more children had in the past allegedly attempted to steal rides on the truck, did not require that appellant reconstruct its truck. Even were the doctrine of "attractive nuisance" recognized in this State, this case would not fall within its ambit, since there is no basis for applying that doctrine to appellant's truck, which was no public or private nuisance and which was a vehicle in motion, performing a legitimate function under the care and custody of an operator. Very few trucks, operated on the streets, are constructed so that boys of tender years cannot climb upon them. Owners of such trucks cannot be cast in damages merely because a child is injured in attempting to hitch a ride on them. If the complaint were not dismissed herein, we would have, in any event, reversed the judgment and granted a new trial on the ground the verdict was against the weight of the credible evidence and was grossly excessive.

WITMER, J. (dissenting). I dissent only from that part of the court's decision which dismisses the complaint as a matter of law for failure to establish that defendant-appellant violated any duty owing by it to the infant plaintiff and his parent. Since the parent's action is derivative, for convenience the plaintiffs will be referred to herein in the singular.

Giving the plaintiff the benefit of every inference which may reasonably be drawn from the evidence, as we must (*Osipoff* v. *City of New York*, 286 N. Y. 422, 425; *Sagorsky* v. *Malyon*, 307 N. Y. 584, 586), the jury could have found facts as hereinafter recited: On July 14, 1959 at about 7:00 P.M., the infant plaintiff, then seven years old, fell from the rear of defendant's moving ice cream vending truck on 24th Street just east of Third Avenue in Manhattan, and was injured. He had been "hitching" a ride. This action was brought to recover damages for his injuries and the expenses thereof.

The defendant was engaged in the business of the sale of ice cream products through the use of trucks adapted for selling and serving customers, mostly children, in residential areas of the city. The truck in question was operated by defendant's employee, Michael J. Russo, also named as a defendant in this action but not served. Under subpœna he was called by the plaintiff as a witness, and he testified. For some months prior to July 14, 1959 he had been assigned by the defendant to an area in Manhattan's east side extending from 21st to 29th Streets and from First to Third Avenues. He worked on a commission basis. On the day of the accident he started to work at about noon and had worked his way southerly from 29th to 21st Streets by driving through each residential street thereof between First and Third Avenues, having made about 25 stops en route, and he had begun to make his return trip. He drove up Third Avenue, skipping 22nd and 23rd Streets because they were business areas, and turned into 24th Street. He was driving slowly and ringing the bells with which his truck was equipped (the sound was amplified), and about one third or one half the distance into the street toward Second Avenue he stopped, preparing to make more sales, when an unidentified passing motorist told him that a boy had fallen from his truck. Russo went back about a hundred feet and found plaintiff injured in the street, a short distance from the corner of Third Avenue.

The truck used by defendant had a standard 1958 Boyertown body on it, of the type used by many bakeries and U. S. mail trucks. Defendant had, however, altered the body in many respects, which, together with the special use to which the truck was put, creates a jury question as to defendant's negligence toward the plaintiff. The defendant adapted the body for use as a vehicle from which one man, the driver, could sell and serve residential

customers in the street, preparing for delivery and selling the ice cream products directly from special windows, with serving counters, cut into each side. In the rear section of the body was a compartment for housing a generator, compressors, mix boxes, water tank, air conditioner, etc. The driver could step from the driver's area to the serving and sales area to dispense the products from a window on either side of the vehicle; but a solid shield separated that area from the rear compartment, and he could not see through the rear of the vehicle.

At the rear of the body were two vertical doors, each with a handle, and these doors were the only means of gaining access to the cooling equipment, which had to be started before the day's "run" and stopped at the end thereof. The floor of the truck body was 2 or 3 feet above the pavement. Beneath the rear doors was a vertical plate, even with the doors, on which were mounted the license plates and rear lights. At the bottom of this plate there was an uncovered ledge or step running the full width of the body and extending out to the rear 9 to 12 inches, which step, the jury could have found, was between 1 and 2 feet above the pavement.

The exterior of the body of the truck was painted white and was distinctively decorated to attract children, the principal objects of its sales offerings. A "Mr. Softee", grinning, with his head topped with ice cream, and attractive caricatures of a little boy and girl, plus descriptions of the products for sale, to wit, cones, shakes and sundaes, were painted on the body. At the rear were words of warning to motorists, "Slow! Watch for Children", accompanied by drawings of "two cute kids", each commendably wearing a bandolier inscribed with the words "Safety Club".

There was no mirror at the left or right rear corner of the truck by which the driver could have seen whether anyone was on the back of the truck, and there was no way for the driver to know whether he had "hitchers" without going back and looking before starting.

Clearly, the success of defendant's business depended upon its appeal to children. To this end the truck was decorated; it was equipped with bells to attract children; and it was operated in residential areas where children were in the streets or where they were induced to gather to approach the truck to buy its products. Defendant's driver, Russo, drove the truck into areas where he expected children to be. He usually found the streets and sidewalks where he went to be crowded with children, and he knew that they often "hitched" rides on the rear step of his truck. In fact, he worried because he had no way to know if children were "hitching" without going back and looking each time before starting; and he warned defendant about the danger of this condition and of the need for doing something to correct it. Two or three months before plaintiff was injured another boy was injured in a similar manner from this truck. Russo reported it to the defendant but the defendant still did nothing about correcting the condition of the truck, such as removing the door handles, covering the step so that it could not be used to climb on while the vehicle was in motion or, if the step were important to the efficient use of the truck for its special purpose, rebuilding it so that when the truck was in motion it would be upright, as the steps of trolley cars or buses were built before the time when they were all enclosed. There is evidence that the defendant did remove the handles from the rear doors of some of its trucks. It is true that some of the testimony in support of the above "facts" may be subject to suspicion; but its weight was for the jury. Upon the facts which the jury could find the defendant is charged with knowing that children would congregate around

its truck and that it should be maintained in a manner safe for them, in the light of their propensities.

The infant plaintiff lived on 27th Street within the area of Russo's ice cream route; and a short time prior to the accident he was playing on 28th Street. He saw defendant's truck, and while it was stopped, making sales, he climbed on the back of it, sat on the step and reached up and held onto the door handles. He rode thus while it made further stops. Then he changed his position to standing and holding onto the handles; and suddenly while the truck was moving, he lost his grip and fell off, sustaining injury. At none of the stops did Russo come back to look to see if he had a rider, and plaintiff was not asked to get off.

The holding of the majority is that the plaintiff was a trespasser, and they have applied the law of the obligation of an owner to a trespasser, namely, merely to refrain from inflicting upon him willful or wanton injury. (*Mendelowitz* v. *Neisner*, 258 N. Y. 181, 184.) In my view that law does not apply in this case. This is not a case of a potentially dangerous vehicle left on private property; but even in such a case recovery has been allowed. (*Parnell* v. *Holland Furnace Co.*, 234 App. Div. 567, affd. 260 N. Y. 604.) It is noteworthy that in his dissent in the *Parnell* case (p. 605), CRANE, J. said, "In affirming this recovery we are going further than any case heretofore reported". But that was by no means the end, for the cases have gone still further. In *Tierney* v. *New York Dugan Bros*. (288 N. Y. 16) the defendant left an attractive vehicle in the street unlocked, although he saw children standing around. He warned the children to keep away from the truck. After he left, the children disobeyed, got in and started it, and one was injured. In holding the defendant liable to the infant, the court said (p. 19) "A dangerous attraction in a public highway may impose liability to a child on the part of the one responsible therefor, because of failure to exercise due care although there would be no liability if the attraction were upon private premises where the child had no right to go." In *Collentine* v. *City of New York* (279 N. Y. 119) where a boy fell off an unguarded roof in a park, the court held the city liable, saying (p. 125), "In deciding what would be reasonable care under the circumstances, the jury were entitled to take into consideration the well-known propensities of children to climb about and play [citation]. That rule applies even though a child might be deemed technically a trespasser. (*Connell* v. *Berland*, 223 App. Div. 234, affd. 248 N. Y. 641)."

In *Kingsland* v. *Erie County Agricultural Soc.* (298 N. Y. 409) the court said (pp. 423–424), "The fact that the boys may have been trespassers on the fairgrounds is immaterial, since there was sufficient evidence that the article which caused the injury was 'inherently dangerous'. * * * The degree of care required is commensurate with the risk involved, depending upon such circumstances as the 'dangerous character of the material' and its accessibility to others, particularly children whose presence should have been anticipated, regardless of whether or not they are trespassers."

In many other cases our courts have held a defendant owner to a greater degree of care when he knows that his activity may well endanger children who at the same time may lack appreciation of the danger. (See *Bowers* v. *City Bank Farmers Trust Co.*, 282 N. Y. 442, 446; *Brzostowski* v. *Coca-Cola Co.*, 16 A D 2d 196, 200.) Of course, the doctrine of "attractive nuisance" has been rejected in New York (*Morse* v. *Buffalo Tank Corp.*, 280 N. Y. 110, 115); but where the safety of children is involved and the owner has reason to foresee their presence and danger, our courts have not hesitated

in many cases to find liability for resulting injury. (See Prosser, Law of Torts [3d ed.], § 59; Restatement, Torts, 2nd Series, Tentative Draft No. 5 [1960], § 339; Comment b, p. 78; Brzostowski v. Coca-Cola Co., 16 A D 2d 196, 203, supra; see Molnar v. Slattery Contr. Co., 8 A D 2d 95, 97–98.)

In the case at bar defendant's duty with respect to its truck must be tested by the use to which it was put. Defendant sent the truck where crowds of children were, and invited children to it to spend their money. Defendant, therefore, not only placed an attractive vehicle (which the jury could find was dangerous to children) on the street without suitable safeguards for their protection, but it openly invited them to the vehicle. The children were business invitees of the defendant, in the defendant's place of business, to wit, the public streets, and the defendant owed them the affirmative duty of due care when they were near its vehicle.

In Tantillo v. Goldstein Bros. Amusement Co., (248 N. Y. 286) the court held, with respect to a boy who did not pay for a ticket for admission but who was asked to participate in an act on the stage and was injured (p. 290) "One who collects a large number of people for gain or profit must be vigilant to protect them." Of course, this principle has been applied with respect to persons of all ages. As its invitees the defendant in this case owed the children whom it solicited, including the plaintiff, protection from risks reasonably to be foreseen. (Philpot v. Brooklyn Baseball Club, 303 N. Y. 116, 121.)

It is true that defendant did not invite the plaintiff to "hitch" a ride on the back of its truck. But it invited all children to come to the truck who were in the vicinity when it would stop; and it was at least a question of fact as to whether the plaintiff was an invitee when he got on the truck. (See Stanton v. Tami Ami Realty Co., 309 N. Y. 953, 955; and see Ancess v. Trebuhs Realty Co., 18 A D 2d 118, dissenting opinion, p. 120.)

In any event, even if the plaintiff was not a potential customer of the defendant that day, the jury could find that he was at least a licensee in approaching the truck; and defendant owed him the duty to use due care not to injure him (Brzostowski v. Coca-Cola Co., 16 A D 2d 196; Potter Title & Trust Co. v. Young, 367 Pa. 239, 244). In the Brzostowski case (supra) a 10-year-old boy, with other boys, entered defendant plant and asked for and received free "cokes". No one told them to keep away from the machinery. The plaintiff attempted to place his empty "coke" bottle on a moving belt, and was injured. The court said (p. 198, HALPERN, J.), "the jury would have had the right to find that the infant plaintiff was a licensee upon the premises and that the defendant, through its employee, had failed to exercise the care required under the circumstances to warn the child of the danger of coming into contact with the moving machinery." Certainly in that case the plaintiff, though a licensee in the premises, had no license to place his empty bottle on the moving belt. But it was not held that he ceased to be a licensee and became a trespasser the moment he did so. Likewise, in the case at bar, plaintiff's status as an invitee, or at least a licensee, did not change when he "hitched" a ride on the truck, as he was innocently able to do because of the defendant's negligence.

I would hold, therefore, that the plaintiffs have a good cause of action against the defendant; that the complaint should not be dismissed; but that a new trial should be granted, with cost to abide the event.

Botein, P. J., Rabin, Valente and Eager, JJ., concur in memorandum by the court; Witmer, J., dissents in part and votes to reverse and order a new trial, in opinion.

Judgment in favor of plaintiffs reversed on the law and the facts and the complaint dismissed, with $50 costs to appellant.