27 A.3d 191

ANTHONY BADALAMENTI, A MINOR BY HIS GUARDIAN JO-
SEPHINE BADALAMENTI AND JOSEPHINE BADALAMENTI,
INDIVIDUALLY, PLAINTIFFS–APPELLANTS, v. VICTOR C.
SIMPKISS, III, COPD SERVICES, AND GELCO CORP., DEFEN-
DANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued April 12, 2011—Decided July 6, 2011.

88

Before Judges CARCHMAN, WAUGH and ST. JOHN.

*Paul R. Melletz* argued the cause for appellant (*Begelman, Orlow & Melletz,* attorneys; *Mr. Melletz,* on the briefs).

*William J. O'Kane, Jr.,* argued the cause for respondents (*Archer & Greiner, P.C.,* attorneys; *Mr. O'Kane* and *John R. Powers,* on the briefs).

The opinion of the court was delivered by

ST. JOHN, J.S.C. (temporarily assigned).

The primary issue addressed in this appeal is whether the driver of a delivery truck owed a duty of care to an unseen trespasser, who fell off the back of the truck and was injured. We hold that the driver had no duty to inspect the rear of the vehicle for unauthorized riders.

Plaintiffs Anthony Badalamenti and his mother Josephine Badalamenti [1] appeal from the May 14, 2010 order granting summary judgment to defendants Victor Simpkiss, III, and his employer, COPD Services, Inc. They also appeal from the July 9, 2010 order denying their motion for reconsideration of the summary judgment and denying relief from their earlier voluntary dismissal with prejudice of the product liability claims. We affirm.

---

[1] For ease of reference, we will refer to Anthony and Josephine Badalamenti by their first names.

The following facts are derived from the record before the motion judge. On March 10, 2006, at approximately 4:00 p.m., Simpkiss parked COPD's delivery truck on Adams Street in Cinnaminson. Simpkiss was delivering an order of stationary liquid oxygen to his customer's home. While Simpkiss was carrying equipment in and out of the home, Anthony, then fifteen, and four teenage friends were standing near the rear of the truck. Anthony and two friends, Michael and Kyle, decided to sit on the rear platform of the truck, which was approximately two feet in depth. Michael sat on the passenger's side, Anthony in the middle, and Kyle on the driver's side. Simpkiss, unaware of their presence, started the engine and went into the house for approximately three minutes. The teenagers engaged in a conversation about how fun and exciting it would be going for a ride on the back of the truck.

Simpkiss returned to the truck and, without circumnavigating or inspecting the rear of the truck or its cargo, climbed into the driver's seat, backed up, and then drove away. As the truck moved forward, Michael immediately jumped off, but Kyle and Anthony remained on the vehicle. Unfortunately, the truck hit a bump causing Anthony to fall off and hit his head. Kyle rode on the truck for approximately two blocks. When the truck stopped at an intersection, he then jumped off, and ran back to Anthony.

The blow to Anthony's head caused significant injuries. Anthony and Josephine filed a complaint against Simpkiss, COPD and Gelco Corp., the owner of the truck, alleging causes of action sounding in negligence and product liability.

In his March 25, 2009 report, Clifford B. Anderson, P.E. of Robson Forensic Inc., failed to opine as to any defects in the truck that would form the basis for a product liability claim. On September 28, 2009, plaintiffs agreed to the voluntary dismissal, with prejudice, of their product liability claim against Simpkiss and COPD, as well as all claims against Gelco Corp., the owner of the truck. After Anderson died, plaintiffs obtained a replacement report from another Robson expert, Brooks Rugemer. The new

report, which was issued approximately four months after the voluntary dismissal, contained references to "rear cargo area back-up mirrors" as support for a product liability claim.

Defendants moved for summary judgment. After oral argument, Judge Karen L. Suter determined that defendants owed no duty to plaintiffs, and granted their motion. Plaintiffs filed a motion for reconsideration, and for relief under *Rule* 4:50–1(f) to vacate the dismissal, both of which were denied. It is from these orders that plaintiffs appeal.

Our review of a ruling on summary judgment is de novo, applying the same legal standard as the motion judge. *Chance v. McCann,* 405 *N.J.Super.* 547, 563, 966 *A.*2d 29 (App.Div.2009). We consider, as did the judge, " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Liberty Surplus Ins. Corp. v. Nowell Amoroso, P.A.,* 189 *N.J.* 436, 445–46, 916 *A.*2d 440 (2007) (quoting *Brill v. Guardian Life Ins. Co. of Am.,* 142 *N.J.* 520, 536, 666 *A.*2d 146 (1995)). We view the evidence submitted by the parties in support of, and in opposition to, plaintiffs' summary judgment motion, in a light most favorable to plaintiffs. *See Brill, supra,* 142 *N.J.* at 540, 666 *A.*2d 146. Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." *R.* 4:46–2(c). If there is no genuine issue of material fact, "[we] must [then] decide whether the trial court correctly interpreted the law." *Massachi v. AHL Servs., Inc.,* 396 *N.J.Super.* 486, 494, 935 *A.*2d 769 (App.Div.2007), *certif. denied,* 195 *N.J.* 419, 949 *A.*2d 847 (2008). Applying these standards, we are satisfied that the trial judge properly granted summary judgment.

Plaintiffs argue that the judge's decision that defendants owed no legal duty to them was erroneous. They further contend that defendants' breach of the duty to have rear cargo mirrors should

have been considered by the trial court as to defendants' negligence.

▮ Plaintiffs posit that the judge erred in granting summary judgment because she failed to find that Simpkiss had a legal duty to inspect the truck before he drove off. Specifically, plaintiffs argue that applicable commercial driving standards mandated an inspection of the truck, which would have revealed Anthony sitting on the bumper. In the alternative, they contend that it is fair to impose this duty on Simpkiss in this case. Defendants respond that a delivery driver does not have a duty to search for persons on the rear of his or her vehicle. In addition, defendants note that duties arising from regulations or statutes, which are not intended to protect against the harm actually suffered by Anthony, will not give rise to a cause of action of negligence. Finally, defendants argue that the imposition of a duty in this case would be unfair.

The motion judge held that *Meade v. Purity Bakeries*, 115 *N.J.L.* 471, 180 *A.* 856 (E. & A.1935), was controlling. As a separate basis for the grant of summary judgment, the judge also considered the factors for analyzing whether a duty exists.

▮ In *Kelly v. Gwinnell*, 96 *N.J.* 538, 544, 476 *A.2d* 1219 (1984), the Court explained this analysis:

> In most cases the justice of imposing such a duty is so clear that the cause of action in negligence is assumed to exist simply on the basis of the actor's creation of an unreasonable risk of foreseeable harm resulting in injury. In fact, however, more is needed, "more" being the value judgment, based on an analysis of public policy, that the actor owed the injured party a duty of reasonable care. *Palsgraf v. Long Island R.R. Co.*, 248 *N.Y.* 339, 162 *N.E.* 99 (1928). In *Goldberg v. Housing Auth. of Newark*, 38 *N.J.* 578, 583 [186 *A.2d* 291] (1962), this Court explained that "whether a *duty* exists is ultimately a question of fairness. The inquiry involves a weighing of the relationship of the parties, the nature of the risk, and the public interest in the proposed solution."

As the motion judge noted, "[t]he essential question is whether the plaintiff's interests are entitled to legal protection against defendant's conduct." She found that each of these factors weighed against Anthony. "There's no foreseeability of this risk. The relationship of the parties is trespasser. The risk was taken on by the plaintiff. The plaintiff had the opportunity and ability to

exercise care and the public interest is not served by finding a legal duty under the facts of this case."

There is no bright line rule that determines when one owes a legal duty to prevent a risk of harm to another. "Duty is a fluid concept." *Tighe v. Peterson,* 356 *N.J.Super.* 322, 330, 812 *A.*2d 423 (App.Div.) (internal quotations omitted), *aff'd,* 175 *N.J.* 240, 814 *A.*2d 1066 (2002). "Whether a legal duty is owed and the scope of that duty is generally a matter of law for the courts to decide on a case by case basis." *Wlasiuk v. McElwee,* 334 *N.J.Super.* 661, 666, 760 *A.*2d 829 (App.Div.2000) (citing *Carvalho v. Toll Bros. & Developers,* 143 *N.J.* 565, 572, 675 *A.*2d 209 (1996); *Kelly v. Gwinnell, supra,* 96 *N.J.* at 552, 476 *A.*2d 1219). Factors to be considered include: "(1) the relationship of the parties; (2) the nature of the attendant risk; (3) the ability and opportunity to exercise control; (4) the public interest in the proposed solution; and, most importantly; (5) the objective foreseeability of harm." *Ibid.* (citing *Alloway v. Bradlees, Inc.,* 157 *N.J.* 221, 230, 723 *A.*2d 960 (1999)). These factors must be "identified, weighed and balanced" by the court in a "fact specific" analysis which "must satisfy 'an abiding sense of basic fairness under all of the circumstances in light of considerations of public policy.'" *Alloway, supra,* 157 *N.J.* at 231, 723 *A.*2d 960 (quoting *Hopkins v. Fox & Lazo Realtors,* 132 *N.J.* 426, 439, 625 *A.*2d 1110 (1993)). "[T]he essential question is whether 'the plaintiff's interests are entitled to legal protection against the defendant's conduct.' Duty is largely grounded in the natural responsibilities of social living and human relations, such as have the recognition of reasonable men; and fulfillment is had by a correlative standard of conduct." *Wytupeck v. Camden,* 25 *N.J.* 450, 461–62, 136 *A.*2d 887 (1957) (quoting *Prosser on Torts* § 36 (2d ed.)).

"Of all the factors noted above, 'foreseeability' has generally received the greatest attention in the case law. The question of whether harm to another is 'foreseeable' is capable of objective analysis and is based on the 'totality of circumstances.'" *Wlasiuk, supra,* 334 *N.J.Super.* at 667, 760 *A.*2d 829 (citing *Clohesy v. Food*

*Circus Supermarkets,* 149 *N.J.* 496, 508–09, 694 *A.*2d 1017 (1997)). *See also J.S. v. R.T.H.,* 155 *N.J.* 330, 337, 714 *A.*2d 924 (1998) (noting that foreseeability of harm is the "foundational" element in the duty analysis and is "susceptible to objective analysis"); *Butler v. Acme Markets, Inc.,* 89 *N.J.* 270, 276, 445 *A.*2d 1141 (1982) (stating that foreseeability of criminal acts of third parties is the "crucial" factor). "The totality of circumstances standard [in determining foreseeability] encompasses all the factors a reasonably prudent person would consider." *Clohesy, supra,* 149 *N.J.* at 508, 694 *A.*2d 1017.

In 1935, the Court of Errors and Appeals considered facts almost identical to those before us. In *Meade,* a six-year-old boy sat on the rear step of a delivery truck. Evidence was offered that "a woman preceding the driver out of the store observed the child," but there was no proof that the driver saw the boy. *Meade, supra,* 115 *N.J.L.* at 472, 180 *A.* 856. The driver began operating the vehicle, and the boy "fell off [and was injured] while the truck was proceeding slowly down the street." *Id.* at 471–72, 180 *A.* 856. The Court held that "[t]he mere circumstance" of the woman's observation "established no more than that the child was visible to her. The circumstance that the child was seen by a person not operating the vehicle does not establish a willful disregard by the operator of the vehicle of the safety of one who was a trespasser." *Id.* at 472, 180 *A.* 856.

As to the issue of duty, the Court held:

We can see no duty upon the owner or driver of a truck to anticipate that a playful child will sit upon the rear step. Attraction or temptation is not legally equivalent to invitation.

"The driver of a private vehicle owes no duty to a trespasser or mere licensee thereon, except to abstain from acts willfully injurious; and that the fact that such trespasser or licensee is an infant, even of tender years, will make no difference in the application of the rule."

[*Ibid.* (quoting *Faggioni v. Weiss,* 99 *N.J.L.* 157, 161, 122 *A.* 840 (E. & A.1923)).]

Here, as in *Meade,* there is no evidence that Simpkiss was aware of Anthony's presence on the platform. Like the injured boy in *Meade,* Anthony was a trespasser. As the Meade Court

reasoned, the trespasser's age is not legally significant because it is not reasonably foreseeable that children will spontaneously sit on truck bumpers. Similarly, it is not reasonably foreseeable that Anthony and his two teenage friends would sit on the truck's bumper, particularly while the vehicle was idling. With the boy's age duly disregarded, the *Meade* Court suggested that the trespasser/trespassee relationship, the lack of foreseeability, and the child's opportunity to control his location mandated no legal duty upon the driver.

Even though it was decided more than seventy-five years ago, *Meade's* reasoning and legal analysis remain sound. We conclude that *Meade* should be applied here to uphold the motion judge's finding that no duty was owed by Simpkiss to Anthony.

Other jurisdictions have addressed the issues raised here, and have reached similar results. In *Renfroe v. Collins and Co.*, 201 *Ala.* 489, 78 *So.* 395 (1917), a twelve-year-old boy was roller-skating, and caught, or attempted to catch, the rear of a moving truck. The boy fell, was injured, and eventually died. The Supreme Court of Alabama held that, if the boy took hold of the truck, he was a trespasser, and "could not recover unless the [driver] knew that he was in a position of peril, and either through simple negligence proximately caused his injury, or wantonly proximately caused his injury." *Id.* at 491, 78 *So.* 395.

*Johnston v. Associated Terminals Co.*, 13 *Cal.App.*2d 121, 56 *P.*2d 259 (Cal.Ct.App.1936), involved a twelve-year-old boy on roller-skates, who approached a truck with a trailer traveling approximately seven miles per hour. Two men in the cab warned him to keep away, but he grabbed on, fell and was crushed. The court held that, "[i]t is a matter of common knowledge that boys are prone to steal rides on all sorts of vehicles propelled along the streets, but it would be an intolerable rule that imposed upon the owner of vehicles the duty of employing guards to keep boys so inclined to trespass at a safe distance therefrom." *Id.* at 123, 56 *P.*2d 259 (internal quotation marks omitted).

In *Gates v. Fien*, 219 *So.*2d 477 (Fla.Dist.Ct.App.1969), a minor jumped on a moving truck and was subsequently injured. There was no evidence that the driver had any knowledge of the boy's presence. The court held:

> The defendant must be aware of the trespasser in order to avoid causing willful or wanton injury unless there is something peculiar in the situation which should reasonably lead him to know that children are trespassing. Since there was no showing that the defendant driver did know of the minor plaintiff's presence, and since the record before the trial court does not disclose any peculiar factor which reasonably should have placed the defendant on notice, plaintiff's allegations to the contrary constituted no more than a bare conclusion of the pleader.

[*Id.* at 478 (internal quotation marks omitted).]

In *Williams v. Cohn*, 201 *Iowa* 1121, 206 *N.W.* 823 (Iowa 1926), plaintiff, a boy of less than two, was killed when a grocery delivery truck crushed him in the plaintiff's driveway. The Supreme Court of Iowa noted generally that "[a] driver of a truck is under no legal obligation to make a search around and under his car lest a child too young for discretion and undirected by parents has tucked herself away in an obscure place beyond the casual and convenient notice of the driver." *Id.* at 825 (internal quotation marks omitted).

The plaintiff in *Gamble v. Uncle Sam Oil Co. of Kan.*, 100 *Kan.* 74, 163 *P.* 627 (1917), a fourteen-year-old boy, ran and caught hold of a moving truck, fell, and his right leg was crushed, which had to be amputated. The jury determined that plaintiff ran alongside the truck long enough to enable the driver to stop the truck and awarded plaintiff $10,000 in damages. The Supreme Court of Kansas reversed, holding that, "[a]ccording to numerous decisions the defendant owed the plaintiff, who was grossly negligent and a trespasser, no duty except not willfully or wantonly to injure him after learning of his presence and peril." *Id.* at 629.

In *Dallas v. Diegal*, 184 *Md.* 372, 41 *A.*2d 161 (1945), the Maryland Court of Appeals held that a driver has no duty to search for a secreted child. *Id.* at 162–163. In addition, the Court noted the "universally accepted rule that mere violation of a statute or ordinance will not support recovery in a negligence case

unless it be further shown ... that the alleged negligence was the proximate cause of the injuries." *Id.* at 162.

In the case of *Barrett v. H.P. Hood & Sons, Inc.,* 338 *Mass.* 789, 154 *N.E.*2d 903 (1959), the plaintiff, a young boy, grabbed and held onto a milk truck, which was backing up. He fell, and was run over. The Supreme Judicial Court of Massachusetts found that "the plaintiff was a licensee on the truck to whom the defendant owed the duty merely to refrain from willful, wanton or reckless conduct tending to expose him to danger" and held for defendant. *Id.* at 903–904.

The plaintiff in *Ravey v. Healy,* 279 *Mich.* 323, 272 *N.W.* 692 (1937), was a ten-year-old girl who was twice told to get off a car's running board, but then hid from the driver by crouching down. No longer seeing her, the driver sped up to eight miles per hour, then spotted her, and began slowing gradually to let her off. Plaintiff either jumped or fell, and sustained injuries, for which the trial court awarded damages. The Supreme Court of Michigan reversed, finding that the defendant exercised the degree of care required, and noting that "[t]he law does not impose any duty on another to guard against sudden, unforeseen and unanticipated acts of another." *Id.* at 694 (internal quotation marks omitted).

In *Pinto v. Mr. Softee of N.Y., Inc.,* 22 *A.D.*2d 874, 254 *N.Y.S.*2d 683 (1964), the plaintiff "hitched" a ride on an ice cream truck. The court noted that "[t]here was no duty to make a change in the vehicle that would prevent the happening of the kind of accident that occurred here ... and the Trial Judge should not have permitted the jury to speculate on the existence of any such duty." *Id.* at 684.

In *Wilson v. Ward Baking Co.,* 318 *F.*2d 674 (6th Cir.1963), the court held that the plaintiff, an eleven-year-old boy who fell from the rear step of defendant's truck, "had not been invited to ride on defendant's truck. He was a trespasser. Under Ohio law, defendant owed him no duty except to refrain from willfully and wantonly injuring him." *Id.* at 675.

In *Jaeger v. Sidewater*, 366 *Pa.* 481, 77 *A.*2d 434 (1951), plaintiff was a thirteen-year-old boy who had been searching through some piles of refuse in South Philadelphia with his friends. Defendant was the truck owner. The truck driver arrived at the scene, and plaintiff assisted him in loading the truck. Plaintiff asked for a ride, and the driver told him to climb up. When plaintiff attempted to alight, the truck jerked, and he fell and was seriously injured. The Supreme Court of Pennsylvania concluded that plaintiff was:

[T]respasser as to defendant who then would be liable to him only if plaintiff could show some wanton act or willful misconduct on the part of the driver while managing the truck. The testimony does not show that the truck driver knew the boy was stepping off the truck or that the jerking motion was due to any deliberate action of the driver. Since the mere jerking motion of a truck has been held not to be such negligent conduct as amounts to a "wanton" act, plaintiff has failed to set forth facts which would allow minor plaintiff to recover as a trespasser and was properly nonsuited by the learned court below.

[*Id.* at 435–436 (internal citations omitted).]

In *Courtright v. So. Compress & Warehouse Co.*, 299 *S.W.*2d 169 (Tex.Civ.App.1957), plaintiff was a six-year-old boy who was killed when he fell from and was run over by defendant's trailer. The court determined that:

[W]e believe there was no duty in law on defendant, as a condition of exercising its privilege [to use public streets], either to maintain guards to prevent children from trespassing on the tractor-drawn trailers or to require its tractor driver to maintain a lookout to the rear to discover the possible presence of children on one of the trailers.

[*Id.* at 172.]

In *White v. Edwards Chevrolet Co.*, 186 *Va.* 669, 43 *S.E.*2d 870 (1947), the plaintiff, a boy of six, secreted himself behind the cab of defendant's truck after defendant had shooed off two other boys. After defendant drove a short way, the boy either fell or attempted to get off the truck and was killed. Defendant was not aware of the boy's presence. As to the issue of duty to the boy, defendant "admitted that before getting into the cab he did not walk around the vehicle and make a search to ascertain whether the child had secreted himself in some place thereon. But he was under no legal obligation to do so." *Id.* at 872. In addition, at the

time of the accident, defendant did not have a valid driver's license. The Supreme Court of Virginia noted that "there is an entire lack of evidence of any causal connection between the statutory violations and the child's injury and death. There is no showing that [defendant's] failure to procure the renewal of his license was due to his incompetency as a driver." *Id.* at 871.

The Supreme Court of Wisconsin in *Routt v. Look,* 180 *Wis.* 1, 191 *N.W.* 557 (1923), held that plaintiff, a three-year-old who had grabbed onto a truck, was:

> [A]t a place where [he] had no right to be, and except for [his] tender years the duty which the driver of the truck owed to [him] would be that owing to a trespasser. It has long been the established law of this state that a person owes no duty to a trespasser except that of refraining from willful and intentional injury. [*Id.* at 559–560.]

*See also* 60A *C.J.S. Motor Vehicles* § 811 (2009) ("The operator of an automobile is under no duty to anticipate the presence of a trespasser on his or her vehicle, or to use due care to acquire knowledge of the presence of a trespasser. In order for a vehicle owner to be liable for injuries to a trespasser on his or her vehicle, he or she ordinarily must have actual knowledge of the trespasser's presence.")

The Supreme Court of Vermont, in similar circumstances, modified the duty owed to a trespasser. The plaintiff in *Lavallee v. Pratt,* 122 *Vt.* 90, 166 *A.*2d 195 (1960), was a boy of nine who, along with a friend, sat on the back of defendant's dairy delivery truck while defendant made his delivery. Defendant saw children at the front of the truck and "ran them to the sidewalk and told them to leave the vicinity of the truck." *Id.* at 91, 166 *A.*2d 195. Defendant did not inspect the back of the truck. When the truck moved, plaintiff and his friend stayed on the truck. Plaintiff's friend eventually jumped to safety, but plaintiff either jumped or fell and was injured. The Supreme Court of Vermont found that plaintiff was a trespasser. However, they also noted that "a trespasser is not an outlaw." *Id.* at 93, 166 *A.*2d 195. The court remanded for a factual determination of whether "reasonable vigilance required the driver to know or apprehend the presence

of plaintiff on the truck," and if so, whether the "driver adequately discharged that duty by ordering the assembled children to a position of safety, without looking to the rear of the delivery truck before going forward." *Id.* at 95, 166 *A.2d* 195. We disagree, and are unwilling to apply the duty set forth in *Lavallee* to the facts in this case.

■ Plaintiffs argue that these cases finding no duty are distinguishable. Plaintiffs assert that the transportation of oxygen, and the duties imposed upon the driver by the commercial drivers license (CDL) manual create a legal duty to prevent a risk of harm to Anthony. Anthony's second expert Rugemer opined that the purpose of the regulation in question, the CDL manual, was to "make sure tires aren't uninflated, overheated, his lighting system still works, his brake system still works and his cargo is secure." The risks that could reasonably follow from a violation of these regulations include deflated tires, malfunctioning lights and brakes, or loss of cargo. Anthony's injury, resulting from his fall from the bumper, is not a harm that a CDL manual protects against. Simpkiss's status as a commercial driver transporting oxygen, and any inspection duty which that status creates, does not "demonstrate that [Simpkiss] owes [Anthony] a duty of care." *Michelman v. Ehrlich,* 311 *N.J.Super.* 57, 68, 709 *A.2d* 281 (App. Div.), *certif. denied,* 156 *N.J.* 405, 719 *A.2d* 637 (1998).

■ Assuming that Simpkiss had a duty to inspect the vehicle at every stop, a tenuous implication not suggested by a fair reading of the New Jersey and Pennsylvania CDL Manuals,[2] such a duty would have no bearing here. If a "plaintiff does not fall within the class of persons for whose benefit the statute was enacted," such statute is "not applicable either as evidence of a duty or as evidence of negligence arising from a breach of such

---

[2] The New Jersey and Pennsylvania CDL manuals are substantively similar, as each was promulgated pursuant to the mandates of the Commercial Motor Vehicle Safety Act of 1986. 49 *U.S.C.A.* § 2701 to 2716, (Title XII of Pub. Law 99–570).

alleged duty." *Fortugno Realty Co. v. Schiavone–Bonomo Corp.*, 39 *N.J.* 382, 393, 189 *A.*2d 7 (1963). *See also Restatement (Second) of Torts* § 288 (1965) ("The court will not adopt ... an administrative regulation whose purpose is found to be exclusively ... (d) to protect a class of persons other than the one whose interests are invaded, or ... (f) to protect against other harm than that which has resulted, or ... (g) to protect against any other hazards than that from which the harm has resulted."); *Prosser & Keeton on Torts* § 36 (5th ed. 2001) ("the harm suffered must be of the kind which the statute was intended, in general, to prevent ... [and] a statute may well be assumed to include all risks that reasonably may be anticipated to follow from its violation."); 8 *Am.Jur.2d Automobiles and Highway Traffic* § 729 (2011) ("The plaintiff must establish further that the violation of the statute or ordinance was the proximate cause, or at least a proximate cause, of the accident and resulting injuries. There must be a direct relation of cause and effect between the violation of the statute or ordinance and the ensuing accident and injury, otherwise there is no liability.")

 We recognize that violation of a statute may sometimes be considered by a jury in determining issues of negligence or contributory negligence. *See, e.g., Braitman v. Overlook Terrace Corp.*, 68 *N.J.* 368, 385, 346 *A.*2d 76 (1975); *Horbal v. McNeil*, 66 *N.J.* 99, 103–104, 328 *A.*2d 604 (1974); *Ellis v. Caprice*, 96 *N.J.Super.* 539, 553, 233 *A.*2d 654 (App.Div.), *certif. denied*, 50 *N.J.* 409, 235 *A.*2d 901 (1967). However, "this rule is subsumed by the overriding principle that the statutory violation, to be evidential, must be causally related to the happening of the accident, since a permissible inference of causality is indispensable to its relevancy." *Mattero v. Silverman*, 71 *N.J.Super.* 1, 9, 176 *A.*2d 270 (App.Div.1961), *certif. denied*, 36 *N.J.* 305, 177 *A.*2d 490 (1962). As we have stated:

The issue of a defendant's liability is not entitled to be presented to a jury simply because there is some evidence of negligence; there must be evidence or reasonable inferences therefrom showing a proximate causal relationship between defendant's negligence, if found by the jury, and the resulting injury.

We perceive no such causality and therefore no direct relevancy in this matter. Since there was no evidence that Simpkiss knew of Anthony's trespassing presence on the bumper, we conclude that defendants must prevail as a matter of law. Simpkiss owed Anthony no duty except to refrain from willfully and wantonly injuring him, and there is no evidence to support that assertion.

▮▮▮▮▮▮ Plaintiffs argue that the motion judge erred in denying their motion for relief under *Rule* 4:50–1(f) because the second expert report, unlike the first report, supported their product liability claim. *Rule* 4:50–1(f) provides:

[T]he court may relieve a party ... from a final judgment or order ... for ...

(f) any other reason justifying relief from the operation of the judgment or order.

"The decision whether to grant [a *Rule* 4:50–1] motion is left to the sound discretion of the trial court, and will not be disturbed absent an abuse of discretion." *Mancini v. E.D.S.*, 132 *N.J.* 330, 334, 625 *A.*2d 484 (1993). Further, "[c]ourts should use *Rule* 4:50– 1 sparingly [and only] in exceptional situations ... in which, were it not applied, a grave injustice would occur." *Hous. Auth. of Morristown v. Little*, 135 *N.J.* 274, 289, 639 *A.*2d 286 (1994).

When Judge Suter denied the motion to reopen the product liability claim, she noted that plaintiffs had failed to exercise numerous opportunities to pursue the claim:

Now by my count, the plaintiff has four times not pursued the products liability claim here.... [W]e have a case where plaintiff had many opportunities to reassert this claim if it could have been reasserted and that occurred over a long period of time.... There [was] nothing outside of the control of the plaintiffs here and it would affect undue prejudice on the defense in this matter because we'd have to start this case over again.

▮▮▮▮ When an application is made under *Rule* 4:50–1(f), "the party requesting relief must show that enforcement of the judgment would be unjust, oppressive or inequitable." *Linek v. Korbeil*, 333 *N.J.Super.* 464, 474, 755 *A.*2d 1229 (App.Div.), *certif. denied*, 165 *N.J.* 676, 762 *A.*2d 657 (2000).

Plaintiffs failed to demonstrate that enforcement of their voluntary dismissal of the product liability claims would be unjust, oppressive or inequitable. The reason for the dismissal, as plaintiffs candidly admit, is that the first expert report did not support a product defect theory. They could have obtained a second expert opinion any time before agreeing to the voluntary dismissal, but did not do so. Even after the new report was served on January 18, 2010, plaintiffs waited four months before asserting that the product liability claim should be revived, and then did so only after summary judgment was granted. Plaintiffs clearly did not proceed with due diligence. Their decision to dismiss the product liability claim was voluntary and, as the motion judge noted, reviving the claim after summary judgment had been granted to the defendants would be prejudicial to the defense. Judge Suter properly exercised her discretion in denying this motion.

Affirmed.