**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0897-23

SHARYN PRIMMER,

     Plaintiff-Respondent,

v.

MICHAEL HARRISON,

     Defendant-Appellant.

_____

Argued January 14, 2025 – Decided March 3, 2025

Before Judges Smith, Chase and Vanek.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Somerset County, Docket No. FM-18-0709-19.

Michael S. Harrison, appellant, argued the cause pro se.

Alix Claps argued the cause for respondent (Heymann & Fletcher, attorneys; Alix Claps, on the brief).

PER CURIAM

     Defendant Michael Harrison appeals the October 13, 2023 Family Part order denying his motion to relitigate issues we previously decided in Primmer

v. Harrison, 472 N.J. Super. 173 (App. Div. 2022) (Primmer I), certif. denied, 253 N.J. 47 (2023), awarding attorney's fees to plaintiff Sharyn Primmer and denying his fee application. Based on our thorough review of the record and applicable law, we affirm on all issues except for the trial court's award of attorney's fees to plaintiff and denial of defendant's fee application, both of which we vacate and remand to the trial court for further proceedings.

I.

A.

We affirmed in Primmer I "substantially for the reasons expressed by the trial judge." Id. at 186. We incorporate the factual and procedural chronology set forth in Primmer I in full by reference, recounting only the following salient facts for context:

> The parties began cohabiting in 1988 and ended their relationship in 2011 . . . . Plaintiff earned roughly $50,000 per year through her medical billing job, and defendant earned far more through his debt collection law firm . . . .
>
> . . . [the parties negotiated a settlement agreement, which] . . . declared each party "made a full disclosure of all relevant financial information[.]" The parties agreed they would purchase a condominium for plaintiff and would share equally in the down payment. However, "[a]s [plaintiff] does not have access to such funds then [defendant] shall front load the down payment required for closing." The agreement required defendant to pay a $140,000 down payment and stated

plaintiff would pay him $70,000 "within three years of the closing date without interest. If this sum is not paid . . . within three years of the closing date, interest will begin to accrue at [one percent] per annum until said sum is paid . . . ." He also agreed to pay plaintiff $1,500 per month on a permanent basis. The agreement stipulated "[p]ayments after the fifth [of the month] shall include a late fee of $100 per day . . . ."

The agreement said it "shall be considered a contract by the parties duly enforceable in" court and contained a severance clause upholding the remainder of the agreement even if a court declared a portion invalid. It required that a "defaulting party shall indemnify the other for all reasonable expenses and costs, including attorney's fees, incurred in successfully enforcing this [a]greement."

. . . .

The parties lived by the terms of their agreement until 2017, except that plaintiff did not pay her share of the down payment. Beginning in July 2017, defendant stopped paying the $1,500 per month . . . .

In February 2018, plaintiff filed a Law Division complaint seeking damages for defendant's breach of the agreement . . . . The counterclaim also alleged plaintiff fraudulently induced defendant into sharing the condominium down payment based on her lack of funds . . . .

The matter was transferred to the Family Part . . . .

. . . .

[After a two-day bench trial was held in March 2020,] [t]he judge rejected defendant's fraud and

rescission claims, finding the negotiations were based on "a lengthy and long relationship" and the parties had independent counsel . . . . He stated:

> . . . .
>
> In this case . . . neither party provided a full disclosure. There were no [case information statements (CIS)] filled out. The parties knew or should have known of the relative positions of each other . . . [plaintiff] never indicated, number one, that she had no monies, but [rather] that she had no liquidity.
>
> [Defendant] took this for what it was worth; did not provide any disclosure of his assets either and the parties entered into what they thought was a fair agreement.
>
> And . . . it was an arm's length transaction.
>
> [Defendant] has not established that but for this misrepresentation this deal would have been any different than what it was.

The judge ordered defendant to pay the monthly support retroactive to the date of breach. He awarded plaintiff $108,300 representing 1,083 days of penalty at $100 per day. The judge found the interest penalty set forth in the agreement was defendant's remedy for enforcement of plaintiff's obligation to pay the $70,000 down payment. He concluded "[t]hose monies should have been paid back within three years from the closing date, which would have been June of [2014] and when they were not, those monies began to accrue interest." He imposed a one percent per month interest penalty on the $70,000, retroactive to the date of breach. He

A-0897-23

4

declined to award counsel fees because both sides had valid claims.

[Primmer I, 472 N.J. Super. at 177-85.]

B.

After we issued our decision in Primmer I, defendant filed a motion with the trial court primarily predicated on his disagreement with our decision, seeking attorney's fees. Plaintiff cross-moved to enter judgment, to impose sanctions and for an award of counsel fees against defendant.

In an oral decision, the trial court granted and denied defendant's motion in part. The trial court granted defendant's request for enforcement of the parties' settlement agreement by crediting the $70,000 plus interest plaintiff owed to the amount of the judgment against him. Defendant's request to impose a penalty of $100 per day on plaintiff for failure to pay her portion of the $70,000 downpayment in accordance with paragraph one of the settlement agreement was denied, along with his request to vacate the contractual penalty imposed against him for non-payment and his other financial obligations under the agreement. Defendant's requests for counsel fees and for an order directing plaintiff to prepare, file, and serve a current CIS were denied.[1]

---

[1] Both parties also sought other relief that was addressed in the October 13, 2023 order but has not been identified as being the subject of this appeal.

In granting plaintiff's cross-motion, the trial court entered judgment against defendant, for "the amount due to defendant from plaintiff on account of the unpaid $70,000, including penalty . . . [totaling] $76,749.36 as of October[] 2023," which is to be credited towards plaintiff's monetary obligation to defendant. The trial court referenced our affirmance in Primmer I, finding "neither one of them have paid monies they were suppose[ed] to pay." The trial court further found defendant "in violation of litigant's rights for failure to abide by the parties' settlement agreement and prior orders of the court . . . [since defendant] has willfully failed to comply with his obligations . . . ."

The trial court awarded plaintiff attorney's fees totaling $4,000 and denied defendant's fee application in its entirety. In reviewing the factors under Rule 5:3-5(c) during its oral statement of reasons, the trial court found the $345 per hour fee charged by plaintiff's attorney was reasonable based on the attorney's experience and qualifications. Although neither party submitted an updated CIS, the trial court found "both parties have the ability to pay their attorneys and their adversary's attorneys," with defendant having previously paid $80,000 in fees, and plaintiff having paid $16,000.

Defendant appealed, asserting the following arguments:

> I. WHETHER THE LAW OF THE CASE DOCTRINE APPLIES TO DEFENDANT'S CLAIMS RELATED TO PLAINTIFF'S ALLEGED FRAUD AND

MISREPRESENTATION, AND TO DEFENDANT'S CLAIMS THAT THE COURT BELOW IMPROPERLY IMPOSED THE PENALTY INCLUDED IN THEIR 2011 AGREEMENT.

A. FRAUD AND MISREPRESENTATION CLAIMS.

B. PENALTY CLAIM.

II. WHETHER THE TRIAL COURT IMPROPERLY AWARDED COUNSEL FEES TO PLAINTIFF, AND DENIED DEFENDANT HIS REQUEST FOR COUNSEL FEES.

We address defendant's arguments in turn.

II.

Defendant did not cite a court rule, statute, or other legal basis for the motion that led to the entry of the October 13, 2023 order. To the extent defendant moved for relief from a judgment or order pursuant to Rule 4:50-1 and sought attorney's fees, we review those determinations for abuse of discretion. See Litton Indus., Inc. v. IMO Indus. Inc., 200 N.J. 372, 386 (2009) ("[W]e note that a reviewing court will disturb a trial court's award of counsel fees 'only on the rarest of occasions, and then only because of a clear abuse of discretion.'") (quoting Packard-Bamberger & Co., Inc. v. Collier, 167 N.J. 427, 444 (2001)); F.B. v. A.L.G., 176 N.J. 201, 207-08 (2003) ("The decision whether to vacate a judgment . . . is a determination left to the sound discretion of the trial court, guided by principles of equity.").

We only find "abuse of discretion when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" U.S. Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467-68 (2012) (quoting Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 123 (2007)). A Rule 4:50-1 motion should be granted "sparingly [and only] in exceptional situations . . . in which, were it not applied, a grave injustice would occur." Badalamenti v. Simpkiss, 422 N.J. Super. 86, 103 (App. Div. 2011) (alteration and omission in original) (quoting Hous. Auth. of Morristown v. Little, 135 N.J. 274, 289 (1994)).

## A.

We discern no abuse of discretion in the trial court's denial of defendant's attempt to relitigate the issues we decided in Primmer I predicated on the law of the case doctrine.

Although non-binding, the law of the case doctrine is "intended to 'prevent relitigation of a previously resolved issue.'" Lombardi v. Masso, 207 N.J. 517, 538 (2011) (quoting In re Est. of Stockdale, 196 N.J. 275, 311 (2008)). A decision made in a particular matter "'should be respected by all other lower or equal courts during the pendency of that case.'" Ibid. (quoting Lanzet v. Greenberg, 126 N.J. 168, 192 (1991)).

The law of the case doctrine has been expressly applied to coordinate appellate courts, which must reject an appellant's "attempts to reargue various matters which were previously decided by th[e] court." Elmora Hebrew Ctr., Inc. v. Fishman, 239 N.J. Super. 229, 232 (App. Div. 1990). Although the doctrine "most commonly applies to the binding nature of appellate decisions upon a trial court if the matter is remanded for further proceedings, [the doctrine also applies] upon a different appellate panel which may be asked to reconsider the same issue in a subsequent appeal." State v. Hale, 127 N.J. Super. 407, 410 (App. Div. 1974).

We are unconvinced the trial court abused its discretion in denying defendant's attempt to relitigate plaintiff's alleged misrepresentation of her financial ability to fund the $70,000 down payment on the parties' collective townhome purchase based on the law of the case doctrine. Another appellate panel rejected defendant's arguments on those issues in Primmer I, after reviewing the fully developed trial record. Defendant has not cited to "additional developments or proofs," sufficient to justify "differing with an earlier ruling" by "a different appellate panel which [is being] asked to reconsider the same issue in a subsequent appeal." See Hale, 127 N.J. Super. at 410.

A-0897-23

B.

Our de novo review reveals no error in the entry of the October 13, 2023 judgment against defendant, since it is supported by "adequate, substantial and credible evidence." Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974).  Defendant does not argue with the trial court's mathematical calculation or entry of the judgment, beyond attempting to relitigate the previously affirmed trial court determinations underlying the contractual penalties.

In Primmer I, we affirmed the trial court's imposition of the contractual penalty on defendant and ordered that "defendant . . . pay the monthly support retroactive to the date of breach.  He awarded plaintiff $108,300 representing 1,083 days of penalty at $100 per day."  472 N.J. Super. at 185-86.  Since plaintiff's cross-motion was granted to enforce amounts found properly due from defendant in Primmer I, we conclude the law of the case doctrine also bars defendant's present dispute with the entry of the judgment.  See Hale, 127 N.J. Super. at 410; Elmora Hebrew Ctr., Inc., 239 N.J. Super. at 232.

C.

Because the trial court did not thoroughly articulate its findings of fact and conclusions of law pursuant to Rule 1:7-4 as to the parties' counsel fee

A-0897-23

applications, we vacate the portions of the October 13, 2023 judgment addressing the fee applications and remand for further proceedings.

In family actions, a trial court has the sound discretion to award counsel fees pursuant to N.J.S.A. 2A:34-23, Rule 4:42-9(a)(1) and Rule 5:3-5(c). See Salch v. Salch, 240 N.J. Super. 441, 443 (App. Div. 1990). Under Rule 5:3-5(c), the trial court must consider:

> (1) the financial circumstances of the parties; (2) the ability of the parties to pay their own fees or to contribute to the fees of the other party; (3) the reasonableness and good faith of the positions advanced by the parties both during and prior to trial; (4) the extent of the fees incurred by both parties; (5) any fees previously awarded; (6) the amount of fees previously paid to counsel by each party; (7) the results obtained; (8) the degree to which fees were incurred to enforce existing orders or to compel discovery; and (9) any other factor bearing on the fairness of an award.

Also, when awarding counsel fees, a

> court must consider whether the party requesting the fees is in financial need; whether the party against whom the fees are sought has the ability to pay; the good or bad faith of either party in pursuing or defending the action; the nature and extent of the services rendered; and the reasonableness of the fees.
>
> [Mani v. Mani, 183 N.J. 70, 94-95 (2005) (citing Williams v. Williams, 59 N.J. 229, 233 (1971)) (emphasis omitted).]

Rule 5:3-5(c) is subject to the provisions of Rule 4:42-9(b) which provides, "all applications for the allowance of fees shall be supported by an affidavit of services addressing the factors enumerated by Rule of Professional Conduct (RPC) 1.5(a)." R. 4:42-9(b). When calculating the amount of reasonable attorney's fees, courts must determine the lodestar, defined as "the number of hours reasonably expended multiplied by a reasonable hourly rate," Rendine v. Pantzer, 141 N.J. 292, 335 (1995), considering the factors set forth in RPC 1.5(a).[2] Ultimately, the "goal is to approve a reasonable attorney's fee that is not excessive," Litton Indus., Inc., 200 N.J. at 388, and as stated recently by the Court, "[a]t its essence, the American Rule requires that litigants 'bear the cost of their own legal representation' by prohibiting 'recovery of counsel fees by the prevailing party against the losing party[,]'" In re A.D., 259 N.J. 337, 351 (2024) (citing Boyle v. Huff, 257 N.J. 468, 479 n.1 (2024)).

---

[2] The RPC 1.5 factors include: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent.

Our ability to resolve an appeal is largely dependent on the trial court's compliance with its Rule 1:7-4 obligation to state its findings of fact and conclusions of law. Rule 1:7-4 requires a trial court to "'state clearly [its] factual findings and correlate them with the relevant legal conclusions, so that parties and the appellate courts [are] informed of the rationale underlying th[ose] conclusion[s].'" Avelino-Catabran v. Catabran, 445 N.J. Super. 574, 594-95 (App. Div. 2016) (alterations in original) (quoting Monte v. Monte, 212 N.J. Super. 557, 565 (App. Div. 1986)); Curtis v. Finneran, 83 N.J. 563, 570 (1980). Without a statement of reasons, "we are left to conjecture as to what the judge may have had in mind." Salch, 240 N.J. Super. at 443.

We vacate the fee award in favor of plaintiff and denial of defendant's fee application, remanding to the trial court to comply with Rule 1:7-4 by setting forth a factual basis for its conclusions on each of the Rule 5:3-5(c) factors as to both fee applications. On remand, the trial court shall require the parties to file fully updated CISs with complete attachments and shall conduct further proceedings as it may deem necessary. To the extent the trial court determines any fee award is appropriate, it shall comply with Rule 1:7-4 as to determining the amount of reasonable fees under RPC 1.5.

A-0897-23

To the extent we have not addressed any of defendant's remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed in part, vacated and remanded in part.  We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

A-0897-23

14